**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

**JARVIS PEELE *et al.*** **PLAINTIFFS**

**v.** **CIVIL ACTION NO. 3:25-CV-620-JHM**

**LOUISVILLE METRO ANIMAL SERVICES *et al.*** **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Jarvis Peele and Development Academy Corporation filed the instant *pro se* civil action proceeding *in forma pauperis*. This matter is now before the Court upon an initial review of the action pursuant to 28 U.S.C. § 1915(e) and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the reasons that follow, the Court will dismiss Plaintiff's claims with prejudice, except for his Fourteenth Amendment claims which will be dismissed without prejudice and with leave to amend.

## I.  BACKGROUND

Plaintiff Peele filed a complaint on his own paper listing himself and Development Academy Corporation as Plaintiffs (DN 1). The Court's Local Rules require that *pro se* civil rights complaints filed under § 1983 must be filed on a Court-supplied form. LR 5.3(a)(3). Therefore, the Clerk of Court issued a notice of deficiency directing Plaintiffs to file the complaint on a Court-approved form (DN 11). Plaintiff Peele then filed a complaint on the Court-approved form, and he did not list Development Academy Corporation as a Plaintiff (DN 1-1). A review of the complaint form showed that several pages were cut off on the right side of the page. Therefore, the Court ordered Plaintiffs to refile the complaint form with all pages fully visible (DN 15).

Plaintiff Peele did not refile the complaint form. Instead, he filed a motion for leave to file supplemental pleadings (DN 16) and a document titled "consolidated supplemental complaint" on

his own paper (DN 17). Because this Court is required to construe the *pro se* pleadings liberally at this stage,

**IT IS ORDERED** that the motion for leave to file a supplemental pleading (DN 16) is **GRANTED.**

The Court finds that the supplemental complaint supersedes, or replaces, the original complaint and previous amendment filed on the Court-approved form and will conduct the initial review of the supplemental complaint only. Plaintiff Peele attaches an affidavit to the supplemental complaint which the Court will also consider on initial review.

Since Development Academy Corporation is not listed as a Plaintiff in the superseding complaint, **IT IS ORDERED** that all claims by Development Academy Corporation are **DISMISSED**.

## II. SUPPLEMENTAL COMPLAINT

Plaintiff Peele (hereinafter Plaintiff) sues Louisville Metro Animal Services (LMAS); Louisville Metro Department of Corrections (LMDC); Louisville Metro Police Department (LMPD); Jefferson County Circuit Clerk's Office; Jefferson County Sheriff's Office; Jefferson County Public Advocate Office; Jefferson County District Court; Louisville Code Enforcement Office; Louisville Metro Council; Louisville Metro Mayor's Office; Jefferson County Commonwealth's Attorney's Office; Metrosafe; WDRB; LMAS Lieutenant Forner; LMAS Sergeant Nagle; LMAS Officer Mattingly; LMAS Officer Ratliff; LMAS Officer Stivala; LMAS Officer Ashley; and Unnamed Agents.[1] He sues the LMAD officers in their individual and official capacities.

---

[1] In the list of Defendants in the supplemental complaint, Plaintiff states, "including all previous defendants." Therefore, the Court broadly construes the supplemental complaint as suing all Defendants listed in the original complaint and the Court-approve complaint form.

This action arises out of LMAS's alleged deprivation of Plaintiff's two sheep and two donkeys that were grazing on vacant property; Plaintiff's arrest for animal cruelty; the criminal proceedings on those charges; and his incarceration in LMDC.  Plaintiff brings claims for violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962 *et seq.*; 42 U.S.C. § 1983 claims for violation of the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments; violation of the Prison Rape Elimination Act (PREA); violation of the Religious Exercise in Land Use and by Institutionalized Persons Act (RLUIPA) and Religious Freedom Restoration Act (RFRA); violation of Kentucky Criminal Procedure; violation of Kentucky election law contribution limits; violation of federal securities fraud law; violation of the Kentucky Code of Judicial Conduct; and violation of the Universal Declaration of Human Rights.

### III.  STANDARD

Because Plaintiff is proceeding *in forma pauperis*, the Court must review the complaint under 28 U.S.C. § 1915(e).  *McGore v. Wrigglesworth*, 114 F.3d at 608–09.  On review, a district court must dismiss a case at any time if it determines that the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).

Although courts are to hold *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519 (1972), this duty to be less stringent "does not require [the Court] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff.  *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).  To command otherwise would require courts "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest

arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

## IV. ANALYSIS

### A. RICO

In support of his RICO claim, Plaintiff states, "Defendants acted together (or knowingly aided one another) to commit multiple predicate acts—extortion, fraud, money-laundering, obstruction of justice, and illegal seizure—establishing an ongoing criminal enterprise including but not limited to obstruction of justice, bond-market manipulation, etc."

To state a RICO claim, a plaintiff must allege "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). A

RICO "enterprise" includes any "individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). RICO defines "racketeering activity" to include, among other things, "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical . . . , which is chargeable under State law and punishable by imprisonment for more than one year[.]"  18 U.S.C. § 1961(1)(A). "A pattern of racketeering activity requires, at minimum, two acts of racketeering activity within ten years of each other." *Heinrich*, 668 F.3d at 409 (citing 18 U.S.C. § 1961(5)). It also requires a showing "'that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity.'" *Id*. (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). To plausibly state a RICO conspiracy claim, "plaintiffs must successfully allege all the elements of a RICO violation, as well as alleging 'the existence of an illicit agreement to violate the substantive RICO provision.'" *Id*. at 411 (quoting *United States v. Sinito*, 723 F.2d 1250, 1260 (6th Cir. 1983)).

Plaintiff bears the burden of asserting "[f]actual allegations [that are] enough to raise a right for relief above the speculative level." *Twombly*, 550 U.S. at 555. Here, Plaintiff sues seventeen individuals or entities across multiple law enforcement agencies. He alleges no plausible facts to show that these individuals and entities were associated to support an "enterprise" under the standard for stating a claim under RICO or that they had an illicit agreement amongst them. Moreover, his allegations of "racketeering activity" are conclusory and unsupported by specific plausible factual allegations supporting a claim for any of the predicate offenses. While the Court must accept as true all of the factual allegations contained in the supplemental complaint, such treatment is not extended to legal conclusions. *Tackett*, 561 F.3d at 488 ("[T]he district court

5

need not accept a 'bare assertion of legal conclusions.'") (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). As the Supreme Court has held, "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Accordingly, Plaintiff fails to meet the elements of a RICO claim, and the claim must be dismissed for failure to state a claim upon which relief may be granted.

### B. PREA

Plaintiff maintains that while he was housed in LMDC he was not allowed to file a PREA complaint, which he states is itself a violation of PREA. However, courts including this one have found that the PREA does not create a private cause of action. *See, e.g.*, *Shaver v. Raymiller*, No. 25-11475, 2025 U.S. Dist. LEXIS 164569, at *4-5 (E.D. Mich. Aug. 25, 2025) (citing cases); *Peterson v. Burris*, No. 14-CV-13000, 2016 U.S. Dist. LEXIS 853, at *3 (E.D. Mich. Jan. 6, 2016) ("Numerous courts that have addressed this issue have determined that the PREA provides no private right of action to individual prisoners.") (citing cases); *Simmons v. Solozano*, No. 3:14CV-P354-H, 2014 U.S. Dist. LEXIS 129249, at *8-9 (W.D. Ky. Sept. 16, 2014) ("[T]he PREA creates no private right of action.") (citing cases). Consequently, Plaintiff cannot state a claim under PREA, and this claim must be dismissed.

### C. RLUIPA and RFRA

RLUIPA prohibits "a land use regulation . . . that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution" unless the government demonstrates that the burden is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest. 42 U.S.C. § 2000cc(a)(1). Similarly, the RFRA prohibits the government from "substantially burden[ing]" a person's exercise of religion even if the burden results from a rule of general applicability unless the government can demonstrate that

the burden is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest.  42 U.S.C. § 2000bb-1(a), (b).

While not entirely clear, the Court construes the supplemental complaint as alleging RLUIPA and RFFA claims based on the deprivation of Plaintiff's sheep and donkeys because he states that the "grazing sheep and donkeys . . . are integral to a lawful nonprofit agricultural-and-religious program."  He also states that in the affidavit that after one of the sheep was found dead, "We did not consume the sheep's meat due to our religious beliefs, which prohibit the consumption of animals found dead under such circumstances.  The sheep held religious significance in our personal rituals, which we had expressed to LMAS agents."  However, Plaintiff also states in the supplemental complaint that "the nature and the intentions of the animals [was] for agriculture and food processing purposes" and that "[t]hese commercial uses are explicitly exempt in the krs code they are using to justify the use of official actions."  Plaintiff asserts in the affidavit that he "oversaw a nonprofit organization dedicated to grazing the sheep on weeds to control overgrowth" and that "the sheep were part of a legitimate business for commercial and agricultural purposes, as allowed by Kentucky state law."  Plaintiff later states in the affidavit that the sheep were "intended for low-cost lawn care and food processing."

In any event, even if the Court assumed the animals were kept for religious purposes, Plaintiff makes no factual allegations to support a claim under RLUIPA or RFRA.  He does not even state what his religion is.  He alleges that while at LMDC he received a Kosher diet and suggests that Defendants are antisemitic.  However, he does not state that he is Jewish or allege how any of Defendants' actions burdened his exercise of his religious faith.  Plaintiff's vague and conclusory allegations are not sufficient to state a claim under RLUIPA or RFRA.  *See Iqbal*, 556 U.S. at 678 (complaint not sufficient "'if it tenders 'naked assertion[s]' devoid of 'further factual

7

enhancement'") (quoting *Twombly*, 550 U.S. at 555, 557).  Therefore, these claims must also be dismissed for failure to state a claim.

### D.  Kentucky Rules Criminal Procedure and Kentucky Code of Judicial Conduct

Plaintiff makes various claims about the handling of his state court criminal case.  To the extent he asserts a claim under the Kentucky Rules of Criminal Procedure, he cannot bring a private action in federal court for violation of Kentucky procedural rules.  Moreover, a claim for violation of the Kentucky Code of Judicial Conduct must be made to the Kentucky Judicial Conduct Commission and may not be brought in this Court.  *See* Ky. Const. § 121; Rule of Supreme Court of Kentucky 4.020(1)(b)(v) (explaining that the Commission can impose sanctions for violations of the Code of Judicial Conduct).  Consequently, Plaintiff's claims for violation of the Kentucky Rules of Civil Procedure and the Kentucky Judicial Code of Conduct must be dismissed for failure to state a claim.

### E.  Kentucky election law

Plaintiff also alleges a violation of Kentucky election law contribution limits.  The only allegations related to Kentucky election law in the supplemental complaint or affidavit are statements he makes regarding non-Defendant Jefferson District Court Judge Katie King, who presided over his criminal action.  Plaintiff states, "Contributions funneled through shell entities to these investors exceed KRS 119.100-119.108 limits, violating Kentucky election law."  Plaintiff does not have a private right of action to sue for a violation of Kentucky election law, and, even if he did, none of the named Defendants could be held liable for any violation.  Therefore, this claim must also be dismissed for failure to state a claim.

8

### F. Federal securities fraud

In relation to federal securities fraud, Plaintiff states, "Use of non-public arbitration outcomes to trade futures on Louisville municipal bonds constitutes insider trading." This allegation also appears to be made in connection with non-Defendant Judge King. Regardless, only federal prosecutors, and not private citizens, have the authority to initiate federal criminal charges. *Sahagian v. Dickey*, 646 F. Supp. 1502, 1506 (W.D. Wis. 1986); *see also United States v. Nixon*, 418 U.S. 683, 693 (1974) ("Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case."); *Saro v. Brown*, 11 F. App'x 387, 388 (6th Cir. 2001) ("A private citizen has no authority to initiate a federal criminal prosecution; that power is vested exclusively in the executive branch."). Plaintiff is a private citizen and cannot bring criminal charges against anyone. Accordingly, Plaintiff's claim based on federal securities fraud must also be dismissed for failure to state a claim.

### G. Universal Declaration of Human Rights

Federal courts do not recognize a private cause of action pursuant to the Universal Declaration of Human Rights or any other declarations from the United Nations. *See, e.g.*, *Sosa v. Alvarez-Machain*, 542 U.S. 692, 734-35 (2004) (indicating that the Universal Declaration of Human Rights is aspirational only and "does not of its own force impose obligations as a matter of international law"). Therefore, the Court will also dismiss this claim for failure to state a claim upon which relief may be granted.

### H. § 1983

Section 1983 creates a cause of action against any person who, under color of state law, causes the deprivation of a right secured by the Constitution or the laws of the United States. A claim under § 1983 must therefore allege two elements: (1) the deprivation of federal statutory or

constitutional rights by (2) a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001).  Absent either element, no § 1983 claim exists.  *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

### 1. Defendants

### a. Louisville Metro Government departments

In regard to Plaintiff's claims against LMAS, LMDC, LMPD, Jefferson County Sheriff's Office, Louisville Code Enforcement Office, and Metrosafe, these entities are not "persons" subject to suit under § 1983 because municipal departments are not suable under § 1983.  *See, e.g.*, *Marbry v. Corr. Med. Servs.*, No. 99-6706, 2000 U.S. App. LEXIS 28072, at *2 (6th Cir. Nov. 6, 2000) (holding that a jail is not an entity subject to suit under § 1983); *Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991) (holding that a police department may not be sued under § 1983). In this situation, Louisville Metro Government is the proper defendant.  *See Dunlap v. Louisville Metro Det. Ctr.*, No. 3:22CV-P412-JHM, 2023 U.S. Dist. LEXIS 176896, at *10 (W.D. Ky. Sept. 30, 2023) (citing *Smallwood v. Jefferson Cty. Gov't*, 743 F. Supp. 502, 503 (W.D. Ky. 1990)). Further, Louisville Metro Government is a "person" for purposes of § 1983.  *See Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658 (1978).

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery Cty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy."  *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)).  The policy or custom "must be 'the

moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

Upon review of the supplemental complaint and affidavit, Plaintiff has not alleged that any action taken against him occurred pursuant to a municipal policy or custom of Louisville Metro Government. Plaintiff alleges occurrences affecting only Plaintiff. *See Fox v. Van Oosterum*, 176 F.3d 342, 348 (6th Cir. 1999) ("No evidence indicates that this was anything more than a one-time, isolated event for which the county is not responsible."). As nothing in the complaint demonstrates any harm caused by a policy or custom implemented or endorsed by Louisville Metro Government, Plaintiff's claims against the Louisville Metro Government departments or agencies must be dismissed for failure to state a claim upon which relief may be granted.

### b. Official-capacity claims against LMAS officers

Moreover, "[o]fficial-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell*, 436 U.S. at 691 n.55). Therefore, Plaintiff's official-capacity claims against the LMAS officers are actually brought against their employer, Louisville Metro Government. *Id.* at 165. As stated above, Plaintiff has established no basis of liability against Louisville Metro Government. Therefore, the official-capacity claims against the LMAS officers must be dismissed for failure to state a claim.

### c. Jefferson County Circuit Clerk's Office and Jefferson County District Court

The Jefferson County Circuit Clerk's Office and Jefferson County District Court are part of Kentucky's judicial system. *See* Ky. Const. §§ 109, 112, & 113. A state, its agencies, and its officials are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*,

11

491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Additionally, a state and its agencies may not be sued in federal court, regardless of the relief sought, unless the state has waived its sovereign immunity under the Eleventh Amendment or Congress has overridden it. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 143-45 (1993); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984). The Commonwealth of Kentucky has not waived its immunity against § 1983 actions, *see Adams v. Morris*, 90 F. App'x 856, 857 (6th Cir. 2004), and in enacting § 1983, Congress did not intend to override the traditional sovereign immunity of the states. *Whittington v. Milby*, 928 F.2d 188, 193-94 (6th Cir. 1991) (citing *Quern v. Jordan*, 440 U.S. 332, 341 (1979)).

Thus, the Court will dismiss Plaintiff's claims against the Jefferson County Circuit Clerk's Office and Jefferson County District Court for failure to state a claim upon which relief may be granted and for seeking damages from an entity immune from such relief. *See, e.g.*, *McKee v. Fayette Circuit Court*, No. 95-5011, 1995 U.S. App. LEXIS 37119, at *4 (6th Cir. 1995) (claim against circuit court barred by Eleventh Amendment); *Shai v. Hall of Just.*, No. 3:24-CV-P523-CHB, 2025 U.S. Dist. LEXIS 229, at *4 (W.D. Ky. Jan. 2, 2025) (dismissing claims against Jefferson District and Circuit Courts for failure to state a claim and as barred by the Eleventh Amendment); *Cope v. Jeferson Cnty. Circuit Court*, No. 3:15CV-P254-TBR, 2015 U.S. Dist. LEXIS 122624, at *5-6 (W.D. Ky. Sept. 15, 2015) (dismissing claim against the Jefferson County Circuit Court Clerk's Office Bond Division because it is not a "person" subject to suit under § 1983 and barred by the Eleventh Amendment); *Baltierra v. Fayette Circuit Court*, No. 5:13-398-DCR, 2013 U.S. Dist. LEXIS 177379, at *6 n.2 (E.D. Ky. Dec. 18, 2013) ("As a constitutional arm of government, the circuit courts are entitled to Eleventh Amendment immunity.").

### d. Louisville Metro Council and Louisville Mayor's Office

To state a claim, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. The doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors. *Monell*, 436 U.S. at 691; *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). "Because § 1983 liability cannot be imposed under a theory of *respondeat superior*, proof of personal involvement is required for a supervisor to incur personal liability." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005). "At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy*, 729 F.2d at 421. The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

Plaintiff does not allege that the Louisville Metro Council, the Louisville Mayor, or the Louisville Mayor's Office was personally involved in the violation of his rights. His claims against them are based on their supervisory authority over others and are therefore not sufficient to state a claim. To the extent Plaintiff alleges that personnel from the Mayor's Office came to LMDC and ignored the complaints he shouted to them from his cell, liability cannot be based on a failure to act or control employees. *Shorts v. Bartholomew*, 255 F. App'x 46, 53 (6th Cir. 2007); *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998). Consequently, Plaintiff's claims against the Louisville Metro Council and the Louisville Mayor's Office will be dismissed for failure to state a claim upon which relief may be granted.

### e.  Jefferson County Commonwealth's Attorney's Office

In the affidavit, Plaintiff alleges that the Jefferson County Commonwealth's Attorney's Office misled and gave him false information about how to handle his arrest warrant.  As stated above, the Commonwealth and its agencies are entitled to sovereign immunity under the Eleventh Amendment.  *See, e.g.*, *Grose v. City of Bartlett*, No. 23-5937, 2025 U.S. App. LEXIS 571, at *6 (6th Cir. Jan. 10, 2025).  The Commonwealth's Attorney's Office is an "arm of the state" for purposes of the Eleventh Amendment, and it is not a "person" subject to suit under § 1983.  *See Nelson v. Ky.*, No. 5:23-CV-14-KKC, 2023 U.S. Dist. LEXIS 22013, at *3 (E.D. Ky. Feb. 9, 2023).  Therefore, Plaintiff's claims against the Jefferson County Commonwealth's Attorney's Office must be dismissed for seeking monetary damages from a defendant immune from such relief and for failure to state a claim.

### f.  Jefferson County Public Advocate Office

Plaintiff makes numerous allegations against his public defenders in his criminal action.  However, it is firmly established that a defense attorney, regardless of whether he is a public defender or a private attorney, is not a state actor for purposes of § 1983.  *Polk Cnty. v. Dodson*, 454 U.S. at 325 ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."); *Otworth v. Vanderploeg*, 61 F. App'x 163, 165 (6th Cir. 2003) ("[A] lawyer representing a client is not, by virtue of being an officer of the court, a state actor under color of state law within the meaning of § 1983.").  Thus, Plaintiff's claims against the Jefferson County Public Advocate Office must be dismissed for failure to state a claim upon which relief may be granted.

## 2. Claims

### a. Fourth Amendment

Plaintiff alleges a Fourth Amendment claim based on the seizure of the animals.[2]  "When the government takes and retains someone's animal (property), the individual's right to possess the animal is interfered with, which equates to a seizure under the Fourth Amendment." *Sarnowski v. City of Wyandotte*, No. 21-11224, 2023 U.S. Dist. LEXIS 141423, at *12 (E.D. Mich. Aug. 14, 2023) (citing *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).

Plaintiff states in the affidavit that LMAS Agent Lanny[3] and Sergeant Nagle seized his two donkeys on April 4, 2023.  He also asserts that at the end of November 2023, he found one of the sheep dead and six weeks later found the second sheep dead.  He states he believes that "government agents were responsible for their deaths and now disappearance."  He states that on August 23, 2024, LMAS officers discovered the dead sheep.  He reports that on August 28, 2024, the sheep's remains were "loaded and removed from the property" and he was told that the sheep were taken to University of Kentucky for a necropsy.  Based on these allegations, the Court finds that the donkeys were seized on April 4, 2023, and that the sheep were seized at the latest on August 28, 2024.

Section 1983 does not contain its own statute-of-limitations period, but constitutional claims asserted under § 1983 are governed by the state personal injury statute of limitations.  *Fox v. DeSoto*, 489 F.3d 227, 233 (6th Cir. 2007) (citing *Wilson v. Garcia*, 471 U.S. 261, 280 (1985)).  Personal injury actions in Kentucky "shall be commenced within one (1) year after the cause of action accrued."  Ky. Rev. Stat. § 413.140(1); *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182

---

[2]  The Court notes that it is not clear from the supplemental complaint or affidavit whether the sheep and donkeys were owned by Plaintiff, Development Academy Corporation, or someone else.
[3] The Court is not able to discern if Agent Lanny is one of the LMAS officers named as a Defendant.

(6th Cir. 1990).  Although the statute of limitations is an affirmative defense, a court may raise the issue *sua sponte* if the defense is obvious from the face of the complaint.  *Fields v. Campbell*, 39 F. App'x 221, 223 (6th Cir. 2002) (citing *Haskell v. Washington Twp.*, 864 F.2d 1266, 1273 (6th Cir. 1988)).

The applicable statute of limitations is determined by state law, but the "date on which the statute of limitations begins to run in a § 1983 action is a question of federal law." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (2007) (citing *Kuhnle Bros., Inc. v. Cnty. of Geauga*, 103 F.3d 516, 519 (6th Cir. 1997)).  The statute of limitations begins to run "when the reasonable person knows, or in the exercise of due diligence should have known, both his injury and the cause of that injury." *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 698 (6th Cir. 2022) (quoting *Bishop v. Children's Ctr. for Developmental Enrichment*, 618 F.3d 533, 536 (6th Cir. 2010)); *see also Robinson v. Butler Cnty.*, *KY*, No. 21-5536, 2022 U.S. App. LEXIS 34938, at *5-6 (6th Cir. Dec. 16, 2022).

The "'statute of limitations for filing an action alleging an unconstitutional search and seizure begins to run at the time of the injury—when the plaintiff knows or has reason to know about the occurrence of the unconstitutional search.'" *Codrington v. Dolak*, 142 F.4th 884, 890 (6th Cir. 2025) (quoting *Shamaeizadeh v. Cunigan*, 182 F.3d 391, 394 (6th Cir. 1999), *abrogated on other grounds by Wallace v. Kato*, 549 U.S. 384 (2007)); *see also Harper v. Jackson*, 293 F. App'x 389, 391 n.1 (6th Cir. 2008) (the statute of limitations on a claim based upon allegations of unlawful search and seizure begins to run on the date of the search); *Michel v. City of Akron*, 278 F. App'x 477, 480 (6th Cir. 2008) (same).  Therefore, Plaintiff's Fourth Amendment claims accrued on August 28, 2024, at the latest.  Plaintiff did not file the original complaint in this action until September 19, 2025, which was more than one year after the one-year statute

16

limitations expired.  Therefore, the Court finds that it is obvious on the face of the complaint that Plaintiff's Fourth Amendment claims are untimely and the claims must be dismissed as frivolous.

### b.  Fifth Amendment

Plaintiff also alleges a violation of the Fifth Amendment.  However, he fails to explain how the Fifth Amendment applies to his claims.  Based on the facts as alleged by Plaintiff, the Court does not find that Plaintiff has a cognizable Fifth Amendment claim against Defendants.  Specifically, the Court notes that to the extent Plaintiff is attempting to rely on the Due Process Clause of the Fifth Amendment, it circumscribes only the actions of the federal government.  *See, e.g.*, *Sturgell v. Creasy*, 640 F.2d 843, 850 (6th Cir. 1981); *Walker v. Hughes*, 558 F.2d 1247, 1257 (6th Cir. 1977).  Here, the actions of federal officials are not at issue, and the Court will dismiss the Fifth Amendment claims for failure to state a claim.

### c.  Sixth and Fourteenth Amendments

Plaintiff alleges a number of claims arising out his ongoing criminal prosecution in Jefferson District Court on charges for animal cruelty, including that he was not permitted to represent himself or present arguments as he intended and that he was denied due process.  The Court construes the allegations as claims under the Sixth and Fourteenth Amendments.

There is "a strong judicial policy against federal interference with state criminal proceedings."  *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 600 (1975).  Thus, when a federal action deals with issues involved in a state court proceeding, the federal court must abstain until the conclusion of the state proceeding, absent extraordinary circumstances.  *James v. Hampton*, 513 F. App'x 471, 473-74 (6th Cir. 2013) (citations omitted).  The Supreme Court first considered the propriety of federal-court intervention in pending state criminal prosecutions in *Younger v. Harris*, 401 U.S. 37 (1971).  "Y*ounger* abstention is not a question of jurisdiction, but is rather based on

17

'strong policies counseling against the exercise of such jurisdiction.'" *O'Neill v. Coughlan*, 511 F.3d 638, 641 (6th Cir. 2008) (citing *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 626 (1986)).  Further, the *Younger* abstention doctrine may be raised *sua sponte* by the court or by the parties.  *See O'Neill*, 511 F.3d at 642; *Pethtel v. Tenn. Dep't of Children Servs.*, No. 3:10-CV-469, 2011 U.S. Dist. LEXIS 132711, at *3 (E.D. Tenn. Nov. 16, 2011).

"The *Younger* abstention doctrine provides that a federal court should abstain from interfering in a state court action when (1) there is an ongoing state judicial proceeding, (2) the state proceeding implicates important state interests, and (3) there is an adequate opportunity in the state proceedings to raise constitutional challenges."  *Graves v. Mahoning Cnty.*, 534 F. App'x 399, 406 (6th Cir. 2013) (citing *Fieger v. Cox*, 524 F.3d 770, 775 (6th Cir. 2008); *Am. Family Prepaid Legal Corp. v. Columbus Bar Ass'n*, 498 F.3d 328, 332 (6th Cir. 2007)).  If the three *Younger* criteria are satisfied, the court should abstain from interfering "unless there is a showing of bad faith, harassment, or another extraordinary circumstance that makes abstention inappropriate."  *Graves*, 534 F. App'x at 406 (citing *Am. Family Prepaid Legal Corp.*, 498 F.3d at 332).  These exceptions have been interpreted narrowly.  *Zalman v. Armstrong*, 802 F.2d 199, 205 (6th Cir. 1986).

The three factors supporting *Younger* abstention are present in this case.  The Commonwealth of Kentucky has an important interest in adjudicating Plaintiff's criminal action.  Plaintiff has not articulated any reason to believe that the Kentucky state courts will not fully and fairly litigate his constitutional claims.  Indeed, to the extent Plaintiff believes that his constitutional rights have been violated by the state trial court, he still has a number of state-court remedies available to him, including appeals to the Kentucky Court of Appeals and the Kentucky Supreme Court.  In addition, Plaintiff alleges no unusual or extraordinary circumstances sufficient

18

to warrant federal intervention at this time.  Therefore, he has failed to show that the state courts are unable to protect his interests at this time, and this Court must abstain from interfering in his on-going state court proceeding.

Furthermore, Plaintiff's allegations do not implicate any of the *Younger* exceptions.  He does not allege a flagrantly unconstitutional statute or an extraordinarily pressing need for federal relief.  To the extent Plaintiff alleges that Defendants have harassed him, the Sixth Circuit has interpreted the "bad faith/harassment" exception very narrowly:

> As we have explained, the Supreme Court has applied the bad faith/harassment exception "to only one specific set of facts:  where state officials initiate repeated prosecutions to harass an individual or deter his conduct, and where the officials have no intention of following through on these prosecutions."  *Ken-N.K., Inc. v. Vernon Twp.*, 18 F. App'x 319, 324-25 n.2 (6th Cir. 2001) (citing Erwin Chemerinsky, Federal Jurisdiction § 13.4, at 806-08 (3d ed. 1999)); *see also, e.g.*, *McNatt v. Texas*, 37 F.3d 629 (5th Cir. 1994) (holding that the bad faith/harassment exception to Younger "is extremely narrow and applies only in cases of proven harassment or prosecutions undertaken without hope of obtaining valid convictions").

*Lloyd v. Doherty*, No. 18-3552, 2018 U.S. App. LEXIS 33324, at \*10 (6th Cir. Nov. 27, 2018).  Plaintiff's allegations do not meet this standard.

For these reasons, Plaintiff's Sixth and Fourteenth Amendment claims based on his ongoing criminal proceedings must be dismissed for failure to state a claim upon which relief may be granted.

### d.  Eighth and Fourteenth Amendments

Plaintiff alleges Eighth Amendment claims for cruel and unusual punishment based on numerous allegations about his incarceration for thirty-eight days in LMDC.  A pretrial detainee is protected from cruel and unusual punishment under the Due Process Clause of the Fourteenth Amendment while the Eighth Amendment is the source of protection for convicted inmates.  *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018).  Because Plaintiff was a pretrial detainee at

the time of the alleged events, his claims are brought under the Fourteenth Amendment, and the claims under the Eighth Amendment must be dismissed for failure to state a claim upon which relief may be granted.

However, as stated above, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff's claim against LMDC was dismissed above. Plaintiff fails to identify or sue any individual whom he alleges violated his constitutional rights while he was housed in LMDC. Therefore, the Court will dismiss the Fourteenth Amendment claims without prejudice to Plaintiff filing a second amended complaint suing any LMDC personnel in their individual capacities whom he alleges were directly involved in the violation of his constitutional rights and stating specific allegations against each. *See LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *Rashada v. Fiegel*, No. 23-1674, 2024 U.S. App. LEXIS 7883, at *12 (6th Cir. Apr. 1, 2024) (approving dismissal of *pro se* complaint without prejudice and with leave to amend).

The **Clerk of Court is DIRECTED** to place this case number and word "Second Amended" on a § 1983 complaint form and send it to Plaintiff, along with three summons forms, should Plaintiff choose to amend the supplemental complaint.

**Plaintiff must file his second amended complaint on the Court-approved form, and it must be limited to claims concerning his incarceration at LMDC only**.

**IT IS ORDERED** that, should Plaintiff file a second amended complaint, he must do so **no later than July 23, 2026.**

## I. WDRB

Plaintiff also sues WDRB, a local television news station. In regard to WDRB, Plaintiff states in the supplemental complaint, "Agents misrepresented the animals' purpose, photographed

20

them, and posted the images on social media and local news without consent, causing reputational harm and invasion of privacy in attempts to humiliate and tarnish reputation and credibility."  The Court construes the allegations as a defamation claim.  A claim for defamation of character under Kentucky law requires the showing of four elements:  (a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party;  (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.  *Sandmann v. N.Y. Times Co.*, 78 F.4th 319, 329 (6th Cir. 2023) (quoting *Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276, 282 (Ky. 2014)).

The Court has reviewed the supplemental complaint and affidavit and finds that Plaintiff's allegations of defamation of character are too broad and conclusory to support a claim.  *See Iqbal*, 556 U.S. at 678 (pleading not sufficient if it offers "'labels and conclusions'" or if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'") (quoting *Twombly*, 550 U.S. at 555, 557). He states that photos were shown of the animals, but he does not identify how the photos conveyed false or defamatory statements or state any other facts to meet the elements of a defamation claim. Accordingly, Plaintiff's claim against WDRB must also be dismissed for failure to state a claim upon which relief may be granted.

## V.  CONCLUSION

For the foregoing reasons, the Court will enter a separate Order dismissing the action.

Date:   June 22, 2026

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:      Plaintiff, *pro se*
4414.010