**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**
**CIVIL ACTION NO. 3:25CV-P620-JHM**

**JARVIS PEELE** **PLAINTIFF**

**v.**

**LOUISVILLE METRO ANIMAL SERVICES *et al.*** **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jarvis Peele filed the instant *pro se* prisoner 42 U.S.C. § 1983 action. By prior Memorandum Opinion and Orders (DNs 18 and 19), the Court conducted an initial review of the supplemental complaint (DN 17) and dismissed all claims with prejudice, except for Plaintiff's Fourteenth Amendment claims based on his incarceration, which the Court dismissed without prejudice and with leave to amend. Plaintiff has now filed a second amended complaint (DN 20), which the Court construes as a motion to reopen the action and amend the complaint.

Upon review, **IT IS ORDERED** that Plaintiff's motion to reopen and amend the complaint (DN 20) is **GRANTED** and the Court's Order of dismissal (DN 19) is **VACATED**. The Court **DIRECTS** the Clerk of Court to reinstate this case to the Court's active docket.

The Court will now undertake an initial review of the second amended complaint (DN 20) pursuant to 28 U.S.C. § 1915A. For the reasons stated below, the Court will dismiss some claims and allow other claims to proceed.

## I. SUMMARY OF ALLEGATIONS

Plaintiff was a pretrial detainee at Louisville Metro Department of Corrections (LMDC) at the time pertinent to the events alleged. He sues Jefferson County/Louisville Metro Government (Louisville Metro Government), LMDC Director Jerry Collins, Major Jason Logsdon, Sergeants

Bobbie Chaney and Chad Wingler, and Corrections Officers Bryan Hamilton Trowell and Jessie Savage. He sues each person in their individual and official capacities, except for Defendant Collins, whom Plaintiff does not indicate in which capacity he is suing.

Plaintiff was housed in LMDC as a pretrial detainee from February 11, 2025, to March 20, 2025. He states that he was arrested on animal cruelty charges "based on frivolous accusations." He asserts that on the day he was booked into LMDC he was "secluded to a small cell for about 8 hours" and that Defendant Chaney "and other agents read my charges outloud and verbally attacked me, suggesting untrue narratives based off the police report and personal appearance." He states that he was "left unattended" and not provided "basic amenities such as toilet paper, bedding and a hot meal" for hours. He reports that he beat on the door and Defendants Trowell and Chaney ignored him. He states, "I suppose that another inmate of different ethnicity would not have been treated as I was."

Plaintiff asserts that he continued his demands which he states "eventually led to Sgt. Chaney and Trowell and other officers of that shift assisting Trowell in physically rubbing my face to the floor of secluded cell in bookin to another secluded cell (yet smaller)" and that they "continued to assert unsolicited pressure over me and threatens me unk. agent even yelling that he is 'real gangster' and he is 'really from Louisville' and has reputation in streets."

Plaintiff further maintains that the next day he was arraigned and "was in a state of distress [] after hours of LMDC investigating Rodney Roberson death I witnessed that same day." He states that he went to court and that when he returned to LMDC he was "placed in solitary confinement by Officer Jesse Savage in the bookin bathroom for several hours." He states that "one of the defendants from the prior day" apologized to him for his harassing behavior. He asserts

that that the behavior from the previous day was "retaliation for me asking them to stop and that their behavior is illegal and untrue."

Plaintiff states that Defendant Logsdon "is said to be over the inmate grievance process." He states that over the 38 days he was incarcerated in LMDC he "submitted many requests while on the kiosk" but that "the system eventually disabled my use from submitting requests or grievances to LMDC agents by intentionally leaving more than 2 inquiries unread." He states that his inability to communicate with LMDC staff "deliberately exposed me to be targeted and later sexually assaulted by 3-4 inmates while on the 6th floor pod J6 on March 10, 2025." He further asserts the following:

> This incident was instigated prior days before once sexual advances from my bunky were firmly rejected leading to more hostile sleeping environments for several days. The only way I could use to prevent this was the facility kiosk database but once I wrote my inquiry I could not submit anymore correspondences. I was jumped by my bunky and 2 or 3 other inmates in the bathroom and forced to let him spit on me. After multiple hours of humiliating myself (after the March 10, 2025 assault in pod J6) by beating on the only entrance door to the pod to garner Sgt. Chad Wingler attention and remove me from the pod to prevent further altercations and receive the medical attention I needed.

Plaintiff states that after the alleged assault he was removed from the pod "but was placed in a nearly 5x5 waterless cell on the same floor" alone for "nearly 6 hours." Then another male inmate was placed in the cell which did not have enough space for him to stretch out and sleep. He states that he continued to request from Defendant Wingler to be able to report the assault "yet I was never checked out by medical staff for the injuries I sustained after the assault to my back along my right sciata nerve, and the swelling of my face and head trauma that felt like a concussion." He states that while in this cell he "was forced to urinate in a corner next to the feet of another inmate for over 16 hours." Plaintiff further maintains that during this time "the staff was unable to locate my Kosher diet trays I had been receiving so for much of that day I was

without access to my commissary, being that the implement a strict policy of forbidding any items besides your body and jumpsuit on your back, therefore I could eat only an apple or permitted fruit provided to the general population for lunch and dinner." He also states that he could not access a phone or access Defendant Wingler to "signal his distress" or file a PREA report despite asking to file one. He reports that later that evening he was transferred to another pod but never allowed to file a PREA report. Plaintiff states that his lawyer saw him days later and that he noticed the bruises and swelling on Plaintiff's face and head which "LMDC staff were deliberately indifferent to."

Plaintiff further states, "Every housing unit I was assigned to did not have sanitary bathrooms especially in J6 where nearly 40 men share only 2 toilets and/or showers. This led to a staph outbreak + infection on or around my lower back."

Plaintiff states that he was released from LMDC on March 20, 2025. He states that "the reputational harm done by defendant Trowell and his subordinates on day one persist throughout my detention and led to inmates around me to deny me basic accomodations (i.e. I was intimidated daily, and denied access to bathroom & sleep on a empty bunk)." He states that Defendants Logsdon and Chaney and non-Defendant Goodin were responsible for inmate safety and staff operation and failed to consider overcrowding and level of risk and safety. He complains of overcrowding in two pods and states that "both units housed me directly with violent and youthful detainees, some post-conviction many pre-trial as myself."

Plaintiff further states, "Director Jerry Collins permits a culture of sexual abuse, drug trafficking, and severe departure from U.S. Constitution as overseer and implementing an unjust code of conduct and operation policy." He maintains that this was "the reason I was subject to an inmate offering drugs for sexual performance and repeated and unwelcomed sexual advances,

verbal comments and gestures." He states that his only personal interaction with Defendant Collins was "seeing him as LMDC investigated Rodney Robertson's death on Feb. 11, 2025." He continues, "But he is to be held accountable as an individual for his significant departure from standard's his position and expertise require of him and his employees training to prevent violence and death." He states that he witnessed at least three inmates enter a unit "with large sharp metal items to be used as shanks."

Plaintiff further asserts the bathrooms in the J6 unit were unsanitary and also "have one over 3 foot long window in the shower area that allows any persons in the main corridor of the floor and adjacent housing units to view me while undressing and/or showering, which felt overly invasive and intentionally deprives inmates any peace of privacy."

Plaintiff states, "I did not provoke officers Trowell and/or Sergeant Bobbie Chaney on either occasion when I was slammed, grappled and threatened in book-in on around Feb. 11, 25. There excessive use of force caused swelling, bruises and mental anguish that persist still." He also asserts, "The motive for the defendants Jerry Collins stems from filing and pending federal complaints against his previous employment at Clark County Jail where he is affiliated with defendants that caused my loss."

As relief, he seeks compensatory and punitive damages, injunctive relief in the form of "removing leadership, repeal/amend policy & practice, revoking assignment/entitlement to bond [illegible] enter into federal consent decree." He also seeks "federal investigation/intervention, restraining order, public apology."

## II. STANDARD

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion

of it, if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be 'less stringent' with pro se complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## III. ANALYSIS

Section 1983 creates a cause of action against any person who, under color of state law, causes the deprivation of a right secured by the Constitution or the laws of the United States. A claim under § 1983 must therefore allege two elements: (1) the deprivation of federal statutory or constitutional rights by (2) a person acting under color of state law. *West v. Atkins*, 487 U.S. 42,

48 (1988); *Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Absent either element, no § 1983 claim exists. *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

### *A. Housing conditions*

Plaintiff makes several claims about temporary housing conditions while at LMDC. The Fourteenth Amendment applies to conditions-of-confinement claims brought by pretrial detainees such as Plaintiff. *See Greene v. Crawford Cnty.*, 22 F.4th 593, 605 (6th Cir. 2022); *Poynter by & through Fernandez v. Shirley*, No. 25-5188, __ F.4th __, 2026 U.S. App. LEXIS 27570, at *6 (6th Cir. Sept. 8, 2026) (noting that for those detained before a criminal conviction the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment is the source of constitutional prohibition against unlawful conditions of confinement). In the context of conditions of confinement, the Fourteenth Amendment's prohibition against cruel and unusual punishments requires prison officials to "provide humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *see also Poynter*, 2026 U.S. App. LEXIS 27570, at *16-17 (instructing courts to apply *Farmer* to Fourteenth Amendment conditions-of-confinement claims just as it has long been applied to Eighth Amendment conditions-of-confinement claims). "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of a . . . violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal citation omitted) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

A conditions-of-confinement claim includes both an objective and a subjective component. *See Wilson*, 501 U.S. at 298. The objective component requires the plaintiff to demonstrate "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S.

at 834. The subjective component requires the plaintiff to demonstrate that a prison official "knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837; *see also Kroese v. Williamson Cnty., Tennessee*, No. 3:25-CV-01268, 2026 U.S. Dist. LEXIS 212212, at *13 (M.D. Tenn. Sept. 18, 2026) ("To state a viable conditions-of-confinement claim under the Eighth Amendment or Fourteenth Amendment, Plaintiff must allege facts from which the Court may reasonably infer that 'there [was] a substantial risk of serious harm the state knew about and disregarded.'") (quoting *Poynter*, 2026 U.S. App. LEXIS 27570, at *19).

Plaintiff complains about several instances where he was temporarily housed in unsatisfactory conditions. He states that on the day he was booked into LMDC he was "secluded to a small cell for about 8 hours" and that he was "left unattended" and not provided "basic amenities such as toilet paper, bedding and a hot meal" for hours. He reports that he beat on the door and Defendants Trowell and Chaney ignored him. Plaintiff also asserts that on another occasion after he returned from a court appearance he was "placed in solitary confinement by Officer Jesse Savage in the bookin bathroom for several hours." He also states that on another occasion he was placed in a "nearly 5x5 waterless cell" alone for "nearly 6 hours" and then another inmate was placed in the cell where he did not have enough space to sleep, "was forced to urinate in a corner next to the feet of another inmate for over 16 hours[,]" and could not access a phone or signal his distress.

Conditions-of-confinement claims "are highly fact-specific, but one guiding principle is that the length of exposure to the conditions is often paramount." *Lamb v. Howe*, 677 F. App'x 204, 209 (6th Cir. 2017). The duration of Plaintiff's complained-of housing circumstances, assuming that the longest lasted 22 hours, is not sufficient to state a constitutional violation. *See Richmond v, Settles*, 450 F. App'x, 448, 455 (2011) (holding that allegations by inmate of denial

of toilet paper, soap, running water, or the ability to shower for six days did not violate the Eighth Amendment); *Lane v. Culp*, No. 05-576, 2007 U.S. Dist. LEXIS 100423, at *11-12 (W.D. Pa. Feb. 14, 2007) (allegation that inmate was denied running water for period of days and forced to sleep on floor without clothing or bedding for seven days failed to state constitutional claim), *report and recommendation adopted*, 2007 U.S. Dist. LEXIS 22474 (W.D. Pa. Mar. 28, 2007).

For these reasons, Plaintiff's claims based on his temporary housing circumstances will be dismissed for failure to state a claim.

***B. Verbal harassment***

Plaintiff asserts that when he was booked into LMDC Defendant Chaney "and other agents read my charges outloud and verbally attacked me, suggesting untrue narratives based off the police report and personal appearance." He also states that this caused "reputational harm" with other inmates. The use of abusive or harassing language by a prison official, although unprofessional and deplorable, does not rise to a constitutional dimension. *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) ("Verbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief."); *Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not rise to the level of a constitutional claim); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) (same). Therefore, Plaintiff's allegations against Defendant Chaney based on verbal harassment and abusive language will be dismissed for failure to state a claim upon which relief may be granted.

***C. Equal protection***

In regard to Plaintiff's allegation that when he was booked into LMDC officers verbally harassed him and placed in a small cell for eight hours, he states, "I suppose that another inmate

of different ethnicity would not have been treated as I was." To the extent Plaintiff may be attempting to allege an equal protection claim based on this statement, the one-sentence allegation is speculative, conclusory, and too lacking in factual specificity to state an equal protection claim. *See Iqbal*, 556 U.S. at 678 (complaint not sufficient "'if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'") (quoting *Twombly*, 550 U.S. at 555, 557). Therefore, any equal protection claim must be dismissed for failure to state a claim.

### *D. Excessive force claim*

Broadly construing the second amended complaint, as is required at this stage, the Court will allow a claim for excessive force in violation of the Fourteenth Amendment based on events allegedly occurring on February 11, 2025, to proceed against Defendants Chaney and Trowell in their individual capacities.

"Official capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Thus, Plaintiff's official-capacity claims are actually brought against Defendants' employer, Louisville Metro Government.

A municipality may not be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). The policy or custom

"must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

Plaintiff does not allege that the excessive force incident occurred pursuant to a policy or custom implemented or endorsed by Louisville Metro Government. Therefore, the excessive claims against Chaney and Trowell in their official capacities and against Louisville Metro Government must be dismissed for failure to state a claim upon which relief may be granted.

***E. Death of other inmate***

Plaintiff states that he witnessed the death of another inmate. Plaintiff obviously cannot state a claim for the death of another inmate. *See Shaw v. Hall*, 5:12-CV-0135-CAR, 2013 U.S. Dist. LEXIS 145860, at *21 (M.D. Ga. Oct. 9, 2013). Even if Plaintiff is attempting to bring a claim on his own behalf, he fails to state any facts to show that any Defendant knew of and disregarded an excessive risk to his own health or safety in relation to the other inmate's death, which is required to state a deliberate indifference claim under the Fourteenth Amendment. *See id.* Therefore, this claim will be dismissed for failure to state a claim.

***F. Retaliation***

Retaliation for the exercise of a constitutional right is itself a violation of the First Amendment actionable under § 1983. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc) (per curiam). In order to state a retaliation claim, a plaintiff must show that: (1) he engaged in constitutionally protected conduct, (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct, and (3) there is a causal connection between elements (1) and (2), meaning that the adverse action was motivated

at least in part by the plaintiff's protected conduct. *King v. Zamiara*, 680 F.3d 686, 694 (6th Cir. 2012) (citing *Thaddeus-X*, 175 F.3d at 394).

Plaintiff states that the verbal harassment by officers on the day he was booked into LMDC was "retaliation for me asking them to stop and that their behavior is illegal and untrue." Plaintiff also states, "The motive for the defendants Jerry Collins stems from filing and pending federal complaints against his previous employment at Clark County Jail where he is affiliated with defendants that caused my loss." The Court construes this statement as alleging a retaliation claim.

These allegations are entirely conclusory and too lacking in factual specificity to support a retaliation claim. *See, e.g.*, *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (finding that "conclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983'") (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that "merely alleg[ing] the ultimate fact of retaliation" is not sufficient to state a claim); *Walker v. Mohr*, No. 2:16-cv-769, 2016 U.S. Dist. LEXIS 123095, at *9-10 (S.D. Ohio Sept. 12, 2016) (finding that the plaintiff's allegations of retaliation were conclusory and not sufficiently specific to satisfy the pleading standard), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 13273 (S.D. Ohio, Jan. 30, 2017). Therefore, Plaintiff's retaliation claims will be dismissed for failure to state a claim.

### *G. Grievances*

To the extent Plaintiff is attempting to assert a claim based on his inability to file grievances, prisoners do not possess a constitutional right to a prison grievance procedure. *See Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005) ("All circuits to consider this issue have . . . found that there is no constitutionally protected due process right to unfettered

access to prison grievance procedures."). Consequently, "a plaintiff cannot premise a § 1983 claim on allegations that a jail's grievance procedure was inadequate and/or unresponsive because there is no inherent constitutional right to an effective jail grievance procedure in the first place." *Olivier v. City of Clarksville*, No. 3:16-CV-03306, 2017 U.S. Dist. LEXIS 24779, at *7-8 (M.D. Tenn. Feb. 21, 2017). This claim will therefore be dismissed for failure to state a claim.

### *H. Attack by other inmates*

Plaintiff alleges that he was attacked while housed in J6 pod by 3-4 other inmates. The Court construes the allegation as a claim for deliberate indifference to safety in violation of the Fourteenth Amendment. Broadly construing the second amended complaint, the Court will allow Plaintiff's claim for deliberate indifference to safety in violation of the Fourteenth Amendment based on his allegation that he was attacked by other inmates to proceed against Defendants Logsdon and Chaney in their individual capacities. Because Plaintiff does not allege that this incident occurred pursuant to a policy or custom of Louisville Metro Government, but was an incident affecting only him, this claim will be dismissed against Defendants in their official capacities and against Louisville Metro Government. *See Monell*, 436 U.S. at 691.

### *I. Denial of medical treatment*

Again broadly construing the second amended complaint, the Court will allow Plaintiff's claim for deliberate indifference to his serious medical needs based on his allegation that he was denied medical treatment after the assault by other inmates to proceed against Defendant Wingler in his individual capacity. Because Plaintiff does not allege that he was denied medical treatment pursuant to a policy or custom of Louisville Metro Government, this claim will be dismissed against Logsdon in his official capacity and against Louisville Metro Government. *See Monell*, 436 U.S. at 691.

***J. Kosher diet tray***

Plaintiff states that when he was housed in the 5x5 cell for over 16 hours he was not given his Kosher diet tray and could only eat an apple or fruit for lunch and dinner. An isolated incident where an inmate is provided a meal that does not comport with his religious dietary restrictions is not sufficient to state a constitutional claim. *Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 2010); *Fouch v. Pivot*, 4:25-CV-P55-JHM, 2025 U.S. Dist. LEXIS 213303, at *4 (W.D. Ky. Oct. 29, 2025); *Zlatin v. Trinity Servs. Grp.*, 2019 U.S. Dist. LEXIS 82528, at *6 (W.D. Ky. May 16, 2019). Therefore, Plaintiff's claim that he was denied a kosher diet tray on one date will be dismissed for failure to state a claim upon which relief may be granted.

***K. PREA investigation***

Plaintiff also alleges that he was not allowed to file a PREA claim. Courts including this one have found that the PREA does not create a private cause of action. *See, e.g.*, *Simmons v. Solozano*, No. 3:14CV-P354-H, 2014 U.S. Dist. LEXIS 129249, at *8-9 (W.D. Ky. Sept. 16, 2014) ("[T]he PREA creates no private right of action.") (citing cases); *Shaver v. Raymiller*, No. 25-11475, 2025 U.S. Dist. LEXIS 164569, at *4-5 (E.D. Mich. Aug. 25, 2025) (citing cases); *Peterson v. Burris*, No. 14-CV-13000, 2016 U.S. Dist. LEXIS 853, at *3 (E.D. Mich. Jan. 6, 2016) ("Numerous Courts that have addressed this issue have determined that the PREA provides no private right of action to individual prisoners.") (citing cases). Moreover, there is no constitutional right to a PREA investigation. *See Williams v. Guester*, No. 1:22-cv-984, 2023 U.S. Dist. LEXIS 21443, at *24-29 (W.D. Mich. Feb. 8, 2023) (dismissing due process claims based upon prison officials' alleged failure to investigate a PREA complaint); *Jackson v. Wicking*, No. 3:20-CV-00249, 2020 U.S. Dist. LEXIS 218534, at *5 (M.D. Tenn. Nov. 23, 2020) (no constitutional right to compel an investigation of a PREA complaint); *Jacoby v. PREA Coordinator*, No. 5:17-cv-

00053, 2017 U.S. Dist. LEXIS 107831, at *10-11 (N.D. Ala. Apr. 4, 2017) (explaining that "[t]he failure to investigate the plaintiff's [PREA] claims in a manner satisfactory to the plaintiff is not a constitutional violation," and "[w]hether an inadequate investigation, or the failure to investigate at all, no § 1983 liability is created"), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 106774 (N.D. Ala. July 11, 2017). Therefore, Plaintiff's allegation that he was not allowed to file a PREA claim will be dismissed for failure to state a claim.

***L. Unsanitary restrooms and overcrowding***

Broadly construing the second amended complaint, the Court will allow Plaintiff's claim for deliberate indifference to safety under the Fourteenth Amendment based on his allegation that unsanitary restrooms and overcrowding caused him to contract a staph infection to proceed against Defendants Logsdon and Chaney in their individual capacities and against Louisville Metro Government.

The Court will dismiss the official-capacity claims against Logsdon and Chaney as redundant to Plaintiff's continuing claim against Louisville Metro Government. *See, e.g.*, *O'Connor v. Chatfield*, No. 2:19-cv-218, 2021 U.S. Dist. LEXIS 230522, at *11 (W.D. Mich. Mar. 29, 2021) (dismissing official-capacity claims against county official because they were redundant to claims against the county) (citing *Kentucky v. Graham*, 473 U.S. at 167 n.14).

***M. Respondeat superior***

Plaintiff alleges, "Director Jerry Collins permits a culture of sexual abuse, drug trafficking, and severe departure from U.S. Constitution as overseer and implementing an unjust code of conduct and operation policy." He also states that Collins should be held accountable because of "his significant departure from standard's his position and expertise require of him and his employees training to prevent violence and death."

To state a claim under § 1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. The doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors. *Monell*, 436 U.S. at 691; *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). "Because § 1983 liability cannot be imposed under a theory of *respondeat superior*, proof of personal involvement is required for a supervisor to incur personal liability." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005). "At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy*, 729 F.2d at 421. The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d 567, 576 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

Plaintiff's allegations against Defendant Collins are not based on Defendant Collins's personal involvement in the alleged events. His allegations against Defendant Collins are based on his supervisory authority over other Defendants. Therefore, Plaintiff's claim against Defendant Collins will be dismissed for failure to state a claim.

***N. Window in restrooms***

Plaintiff maintains that the restrooms in the J6 unit "have one over 3 foot long window in the shower area that allows any persons in the main corridor of the floor and adjacent housing units to view me while undressing and/or showering, which felt overly invasive and intentionally deprives inmates any peace of privacy." Although prisoners may retain reasonable expectations of bodily privacy in prison under the Fourth Amendment, such rights are necessarily curtailed due

to the fact of confinement. *Cornwell v. Dahlberg*, 963 F.2d 912, 916 (6th Cir. 1992). This limited right to privacy, among other things, "protects [prisoners] from being forced unnecessarily to expose their bodies to guards of the opposite sex." *Kent v. Johnson*, 821 F.2d 1220, 1227 (6th Cir. 1987). Plaintiff does not allege that he was forced to expose his body to guards of the opposite sex. Nor do his allegations present circumstances that are atypical of a prison setting. Therefore, his allegation regarding the presence of a window in the restroom will be dismissed for failure to state a claim.

### *O. Requests for non-monetary relief*

Plaintiff requests several forms of injunctive relief. However, an inmate's release from confinement moots his request for injunctive relief. *See Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998) (holding that a prisoner's § 1983 claims for injunctive relief became moot after he was transferred to another facility); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (same). Because Plaintiff is no longer incarcerated at LMDC, his requests for injunctive relief will be dismissed for failure to state a claim.

Plaintiff also requests a "federal investigation/intervention," but "[i]t is well settled that the question of whether and when prosecution is to be instituted is within the discretion of the Attorney General." *Powell v. Katzenbach*, 359 F.2d 234, 235 (D.C. Cir. 1965). A district court has no authority to order a criminal investigation nor can it do so itself. *Kuilan v. Zimmerman*, No. 22-5331, 2022 U.S. App. LEXIS 29631, at *2 (6th Cir. Oct. 24, 2022); *see also United States v. Trevino*, 7 F.4th 414, 421 (6th Cir. 2021) ("'[T]he Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case.'") (quoting *United States v. Nixon*, 418 U.S. 683, 693 (1974)). Accordingly, Plaintiff's claim based on his request for a federal investigation must also be dismissed for failure to state a claim.

Plaintiff also requests a public apology. However, such relief is not available in a § 1983 action. *See Woodruff v. Ohman*, 29 F. App'x 337, 346 (6th Cir. 2002) (concluding in a § 1983 action that "the district court exceeded its equitable power when it ordered [defendant] to apologize" and holding that "'[w]e are not commissioned to run around getting apologies'") (quoting *McKee v. Turner*, 491 F.2d 1106, 1107 (9th Cir. 1974)); *Smith v. Mesa*, No. 2:13-CV-01255-JAD, 2013 U.S. Dist. LEXIS 175966, at *7 (D. Nev. Dec. 13, 2013) ("A plaintiff may not secure an order in a federal civil rights action directing an officer to make a public apology . . . ."); *Kitchen v. Essex Cnty. Corr. Facility*, No. 12-2199 JLL, 2010 U.S. Dist. LEXIS 46216, at *10 (D.N.J. May 31, 2012) ("The remedy of 'apology,' however, is not cognizable, either within the meaning of a § 1983 action or as a general legal remedy that a court has the power to order, under any provision."). Plaintiff's request for a public apology, therefore, will also be dismissed for failure to state a claim.

## IV. CONCLUSION

For the foregoing reasons, the Court has allowed the following claims to proceed: (1) claim for excessive force in violation of the Fourteenth Amendment based on events allegedly occurring on February 11, 2025, against Defendants Chaney and Trowell in their individual capacities; (2) claim for deliberate indifference to safety in violation of the Fourteenth Amendment based on Plaintiff's allegation that he was attacked by other inmates against Defendants Logsdon and Chaney in their individual capacities; (3) claim for deliberate indifference to his serious medical needs based on his allegation that he was denied medical treatment after the assault by other inmates against Defendant Wingler in his individual capacity; and (4) claim for deliberate indifference to safety under the Fourteenth Amendment based on his allegation that unsanitary

restrooms and overcrowding caused him to contract a staph infection against Defendants Logsdon and Chaney in their individual capacities and against Louisville Metro Government.

IT **IS ORDERED** that all other claims alleged in the complaint are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that the official-capacity claims against Defendants Logsdon and Chaney are **DISMISSED** as redundant to the continuing claim against Louisville Metro Government.

Because no claims remain against them, the **Clerk of Court** is **DIRECTED** to **terminate Defendants Collins and Savage as parties to this action**.

The Court will enter a separate Service and Scheduling Order to govern the development of the claim the Court has allowed to proceed. In allowing claims to proceed, the Court passes no judgment on their merit or ultimate outcome.

Date: October 22, 2026

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, *pro se*
4414.010